The defendant, Gloria Jones, was indicted for the possession of Cocaine in violation of R.C. 2925.11 (A). Subsequently, she filed a motion to suppress, but the motion was overruled by the Court of Common Pleas of Montgomery County. After the motion was denied, Ms. Jones entered a plea of no contest, but she was found guilty, and from the judgment and sentence thereupon entered in the trial court, Jones has perfected an appeal to this court.
In this court, the only assignment of error has been set forth as follows:
 "THE COURT ERRED IN FAILING TO SUPPRESS EVIDENCE FLOWING FROM THE ILLEGAL SEARCH AND SEIZURE OF APPELLANT IN VIOLATION OF HER RIGHTS PURSUANT TO THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION."
With reference to the alleged error, the facts disclose that on April 1, 1997, at about 1:30 a.m., Officers Daly and Copely were patrolling the area around Yuma Courts, a Dayton Metropolitan Housing Authority property on Edgewood Avenue. As they went by the center entrance of the complex, they saw Alonzo Swain, Gloria Jones and another woman leaving 216 Yuma Place, a known drug house.
Yuma Courts was in an area known for prostitution and drugs, and Officer Daly knew Alonzo Swain from numerous contacts, including several drug arrests. In fact, Swain had an outstanding warrant for his arrest, and he was on a trespass list, meaning that he was not permitted to be in Yuma Courts. Officer Daly also knew that Swain was a "street geeker", an individual who flags down traffic and buys drugs from nearby drug houses for occupants of the cars.
Officers Daly and Copely drove their cruiser around the block and, upon their return, observed Swain, Jones and the second female as they approached a two-door Mercury Cougar. Jones was standing at the driver's side of the automobile and the other female was standing on the passenger side as Swain was about to enter upon the back seat. Daly addressed Swain by name and requested that he walk to the police cruiser, but Swain physically resisted the arrest.
Subsequently, a top-priority signal was sent to all police officers in the area, and within a few minutes, a number of uniformed officers arrived at the scene. When the assistance arrived, Officers Daly and Copely were attempting to handcuff Swain, and Jones was in the driver seat of her car as the other female was entering upon the passenger side.
At that point, Officer Daly directed other officers to detain Jones and her companion whereupon Officer Jack Simpson approached the Mercury Cougar and asked Jones to step out of the car. Simpson ordered Jones to place her hands on the vehicle for a pat-down search for weapons, and Officer Jennifer Grienwald proceeded to conduct the outer-clothing pat-down of Jones. However, as she did so, Jones reached for her waistband and toward the front of her pants.
As Officer Grienwald patted the exterior of the appellant's right front coat pocket, she felt a square object which nicked her finger and then, upon reaching into the pocket, she found a razor blade and a piece of screen which Officers Daly and Grienwald knew were associated with crack cocaine. Grienwald continued her pat-down search and came upon two pebble-sized objects which later field-tested positive to be crack cocaine. Jones was thereupon arrested for the possession of crack cocaine, advised of her Miranda rights, and charged with the offense.
In support of the motion to suppress, Jones argued that the police violated her constitutional rights when they detained her and conducted the pat-down search for weapons, and the question thus presented is whether the officers were armed with specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusive action taken on April 1, 1997. See, Terry v. Ohio
(1968), 392 U.S. 1.
In this regard, the evidence discloses that Jones was stopped in an area which was known for a high level of drug activity at about 2:00 a.m. in compliance with an order of Officer Kenneth Daly, who had wide experience as a policeman and unusual familiarity with drug transactions in the particular area where Ms. Jones was detained for the pat-down search. In fact, Daly testified, in this regard, that "knowing Mr. Swain, this is basically Mr. Swain's occupation, them coming from that active drug house and going to the car was enough in my mind that she was involved in a drug transaction which I've seen several hundred times, probably 10, 15, times with Mr. Swain himself, several of which have resulted in drug arrests."
The evidence shows further that Jones was "fidgety" during her detention and that she reached several times for her waistband and pockets. Moreover, she had to be advised several times to stand still and keep her hands on the car.
Officers Daly and Copely, as well as Officer Grienwald, who made the pat-down check for weapons, may have been relatively safe after assistance arrived upon the scene, but any number of cases have recognized that guns and drugs are frequent companions, and such a joinder was not beyond reasonable comprehension after Jones was observed leaving a crack house with the geeker during early morning hours.
Here, Officer Daly probably was not certain that either Swain or Jones was armed. But the test to be applied to the evidence is whether a reasonably prudent officer, under the totality of circumstances, would be warranted in the belief that his safety or that of others might be in danger. And in the present case, Daly had seen the three subjects together, had wrestled with Swain in order to arrest him, and saw Jones entering her Mercury as though she was about to leave the premises.
As shown by the record, Daly had done "a lot of drug work" around housing projects, even on bikes, and from the standpoint of "reasonableness", which is all that the Fourth Amendment requires, it would be presumptuous for this court to suggest from the comfortable surroundings of a law library that his order to Grienwald to pat Jones down for weapons was unreasonable. See, State v. Evans (1993), 67 Ohio St.3d 405. Indeed, the purpose of the frisk for weapons in the present case was to facilitate the overall investigation without fear of violence. See, Adams v. Williams (1972), 407 U.S. 143; Statev. Bobo (1988), 37 Ohio St.3d 177.
Hence, this court perceives no valid reason to depart from the erudite and scholarly analysis of the Common Pleas Court, and its judgment will be Affirmed.
BROGAN, J., and WOLFF, J., concur
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Cheryl A. Ross Michael L. Wright Hon. Dennis S. Langer